QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Michael Williams (Bar No. 181299)
   michaelwilliams@quinnemanuel.com
  Justin Griffin (Bar No. 234675)
   justingriffin@quinnemanuel.com
  A.J. Bedel (Bar No. 243603)
   ajbedel@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for DIRECTV, Inc.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>JONATHAN MITCHELL SHIFF | CASE NO. 08:05226-LT<br><br>DIRECTV, INC.'S MOTION FOR ORDER TEMPORARILY ALLOWING DIRECTV'S CLAIM FOR VOTING PURPOSES<br><br>Date: September 8, 2009<br>Time: 10:00 a.m.<br>Place: Department 3, Room 129<br>United States Courthouse<br>325 "F" Street<br>San Diego, California 92101 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT .............................................................................................................. 4

I.  BANKRUPTCY RULE 3018(A) AUTHORIZES DIRECTV'S CLAIM TO BE TEMPORARILY ALLOWED FOR VOTING PURPOSES ............... 4

II. DIRECTV HAS EASILY ESTABLISHED THAT ITS CLAIM IS COLORABLE. ................................................................................................. 5

III. STATUTORY DAMAGES UNDER THE ACPA PROVIDE A BASIS TO ESTIMATE THE AMOUNT OF DIRECTV'S CLAIM ......................... 6

CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES

Page

### Cases

*1-800 Contacts, Inc. v. WhenU.com*,
  309 F. Supp. 2d 467 (S.D.N.Y. 2003) .................................................................. 8

*In re Armstrong*,
  294 B.R. 344 (B.A.P. 10th Cir. 2003) .................................................................. 5

*Aztar Corp. v. MGM Casino*,
  2001 WL 939070 (E.D. Va. 2001) ....................................................................... 7

*Electronics Boutique Holdings Corp. v. Zuccarini*,
  2000 WL 1622760 (E.D. Pa. 2000) ............................................................ 6, 8, 10

*In re FRG, Inc.*,
  121 B.R. 451 (Bankr. E.D. Pa. 1990) .................................................................. 6

*Graduate Management Admission Council v. Raju*,
  267 F. Supp. 2d 505 (E.D. Va. 2003) ................................................................ 7-9

*In re Harmony Holdings, LLC*,
  395 B.R. 350 (Bankr. D.S.C. 2008) ..................................................................... 5

*Lahoti v. Vericheck, Inc.*,
  2007 WL 426979114 (W.D. Wash. 2007) .......................................................... 7

*Louis Vuitton Malletier and Oakley, Inc. v. Veit*,
  211 F. Supp. 2d 567 (E.D. Pa. 2002) .................................................................. 8

*Pinehurst, Inc. v. Wick*,
  256 F. Supp. 2d 424 (M.D.N.C. 2003) ............................................................... 7

*Scotts Co. v. United Industries Corp.*,
  315 F.3d 264 (4th Cir. 2002) ............................................................................... 8

*In re Stone Hedge Props.*,
  191 B.R. 59 (Bankr. M.D. Pa. 1995) ................................................................... 4

*Virtual Works v. Volkswagen of America, Inc.*,
  238 F.3d 264 (4th Cir. 2001) ............................................................................... 9

*In re Wright*,
  355 B.R. 192 (C.D. Cal. 2006) ............................................................................ 7

## Statutes

Federal Rule of Bankruptcy Procedure 3018(a)......................................................................1, 4

11 United States Code § 1126(a)...........................................................................................4

15 United States Code § 1117(d)...........................................................................................6

15 United States Code § 1125(d).......................................................................................1, 5-6

Pursuant to Federal Rule of Bankruptcy Procedure 3018(a), Creditor DIRECTV, Inc. ("DIRECTV") hereby moves for entry of an order temporarily allowing DIRECTV's claim, totaling $10,700,000 as set forth in its timely filed proof of claim (the "Claim"), for the purpose of voting on Debtor's proposed plan of reorganization. This Motion is supported by the evidence contained in the Request for Judicial Notice (the "RJN") filed concurrently herewith and the record in this case.

## INTRODUCTION

Debtor has attempted to deprive DIRECTV, one of the largest creditors in this bankruptcy, of its right to vote on Plan Confirmation by objecting to DIRECTV's claim and thus impairing it for voting purposes under the Plan. Because DIRECTV's Claim will not be resolved prior to the deadline to vote on the Plan, DIRECTV requests that this Court temporarily allow DIRECTV's Claim in the full amount pursuant to Federal Rule of Bankruptcy Procedure 3018(a) so that it can vote on the Plan. Under Bankruptcy Procedure 3018(a), a claim should be temporarily allowed for voting purposes if a claimant presents "sufficient evidence that it has a colorable claim capable of temporary evaluation." Here, DIRECTV has easily met that standard.

As explained in the pleadings previously filed with this Court, which are included in DIRECTV's Request for Judicial Notice filed concurrently herewith, DIRECTV has clearly established a colorable claim that Debtor has committed over 100 violations of the Federal Anti-Cybersquatting Protection Act, 15 U.S.C. § 1125(d) ("ACPA") by registering domain names using DIRECTV's trademarks in bad faith. Moreover, under the ACPA, DIRECTV is entitled to statutory damages in an amount up to $100,000 per domain name, rendering this claim capable of temporary evaluation. Debtor's bad faith conduct warrants the maximum statutory damages per domain name and DIRECTV's Claim should be temporarily allowed in the amount of $10,700,000 for purposes of voting on Debtor's Plan.

## STATEMENT OF FACTS

Debtor initiated this Chapter 11 case by filing a voluntary petition for relief on June 12, 2008. For over a decade, Debtor owned and operated a company called Professional Satellite and Communications, Inc. ("ProSat"), which served as an independent retailer for DIRECTV. During that time, Debtor was repeatedly informed and understood that, other than DIRECTV itself, no entity, including retailers of DIRECTV's products and services, was (or is) authorized to identify itself as DIRECTV.[1] Debtor also "agree[d] not to register or attempt to register in any country any name or mark, in whole or in part, resembling or confusingly similar to any of the DIRECTV Marks (including registration of domain names, internet/website addresses, etc.)."[2] In fact, DIRECTV's retailers were only authorized to use DIRECTV's Marks in a limited manner governed by written trademark and logo policies, which explicitly did not include use in a retailer's domain name.[3]

Between February and May 2008, Debtor registered over one hundred domain names incorporating DIRECTV's registered marks, or confusingly similar variations thereof, without DIRECTV's knowledge or authorization. Each of these unauthorized domain names was registered to Debtor at his address. Upon his termination as a DIRECTV retailer in June 2008,[4] Debtor purposefully directed

---

[1] Request for Judicial Notice In Support of DIRECTV's Motion For Order Temporarily Allowing Claim For Voting Purposes ("RJN"), Exh. D at 55-58 (Declaration of Kristin Haley ISO DIRECTV's Response to Objection to Proof of Claim ¶¶ 4-15 [Docket No. 413-2]).

[2] See RJN, Exh. D at 57, 98, 128.

[3] A domain name is a unique alphanumeric Internet address that consists of a string of characters separated by periods. The "domain name" serves as the primary identifier of the source or subject matter of information, products, or services provided on the Internet. Examples of domain names are "amazon.com," "yahoo.com" and "google.com."

[4] After leaving ProSat, Debtor worked with another DIRECTV retailer named Bigger Bang, LLC until that relationship was terminated in June 2008.

1 each of the unauthorized domain names to a fake government website, set up by
2 Debtor, that claimed to provide information about the analog to digital television
3 conversion.  In fact, the website actually operated as a vehicle to sell the products
4 and services of Dish Network, a major DIRECTV competitor.

5       To recover the infringing domain names, DIRECTV filed an action
6 before the World Intellectual Property Organization ("WIPO") to recover the
7 infringing domain names.  At that time, DIRECTV was first alerted to the fact that
8 Debtor had filed for bankruptcy.  Thus, DIRECTV filed a motion for relief from
9 stay in Debtor's bankruptcy to allow its WIPO action to proceed.  In December
10 2008, as a settlement of the relief from stay motion, Debtor agreed to transfer all of
11 the unauthorized domain names to DIRECTV.

12       On January 14, 2009, DIRECTV timely filed its Claim, as evidenced in
13 a proof of claim in the amount of $10,900,000.[5]  The Claim asserts that Debtor
14 repeatedly violated the ACPA by registering these domain names in bad faith.  On
15 May 4, 2009, Debtor filed an objection to the Claim.  At a hearing on July 15,
16 2009, this Court declined to disallow the claim based on the filings and set the
17 matter for an evidentiary hearing to determine the validity of the claim, which is
18 currently set for December 14 and 15, 2009.[6]

19       Debtor has recently filed his Third Amended Plan of Reorganization
20 (the "Plan").[7]  The deadline to vote to accept or reject the Plan is September 3,
21 2009.[8]  Under the Plan, the Claim appears to be classified as a Class 21(b) General
22 Unsecured Claim; Class 21(b) claims are impaired and not entitled to vote on the

---

[5] This amount was later reduced to $10,700,000 based upon a miscalculation of the number of domain names at issue.
[6] Minute Order dated July 15, 2009 [Docket No. 487].
[7] *See* Third Amended Chapter 11 Plan of Reorganization [Docket No. 499].
[8] *See* Order Approving Third Amended Disclosure Statement [Docket No. 507].

1  Plan.⁹  On information and belief, the Claim is the largest claim that would be
2  classified in Class 21(b).

3        The Plan also provides that only "Allowed Claims" (as that term is
4  defined in the Plan) are entitled to vote on the Plan.  The Plan states that the mere
5  filing of an objection results in a claim being not an "Allowed Claim," and thus the
6  holder of such a disputed claim would be deprived of the opportunity to vote on the
7  Plan.

8        Debtor's objection to DIRECTV's claim will not be resolved by the
9  Plan voting deadline based on the current dates for the evidentiary hearing on the
10 claim.  Consequently, solely by virtue of Debtor's unresolved claim objection,
11 DIRECTV will not be permitted to vote its Claim on the Plan unless this Court
12 temporarily allows the Claim for voting purposes.

### ARGUMENT

**I.   BANKRUPTCY RULE 3018(A) AUTHORIZES DIRECTV'S CLAIM TO BE TEMPORARILY ALLOWED FOR VOTING PURPOSES**

16       Section 1126(a) of the Bankruptcy Code requires that only holders of
17 allowed claims are entitled to accept or reject a Chapter 11 plan.  *See* 11 U.S.C. §
18 1126(a).  Because a claim that a debtor objects to is not deemed allowed under
19 section 1126(a), "[a] creditor whose claim is objected to is therefore disenfranchised
20 from voting on the plan unless the objection is adjudicated prior to plan voting, or a
21 mechanism, such as temporary allowance, is provided for."  *In re Stone Hedge*
22 *Props.*, 191 B.R. 59, 63 (Bankr. M.D. Pa. 1995).

23       Federal Rule of Bankruptcy Procedure 3018(a) enables an otherwise
24 non-allowed claim to be temporarily allowed for purposes of voting on a Chapter 11
25 plan.  FED. R. BANKR. P. 3018(a).  Bankruptcy Rule 3018(a) provides this
26 mechanism in order to prevent a debtor from ensuring the passage of his

---

⁹  *See* Third Amended Chapter 11 Plan of Reorganization at § 4.1 [Docket No. 499].

reorganization plan, or unfairly depriving a creditor holding an impaired claim of an important right to vote by the mere filing of an objection to the claim of a dissenting creditor.  *See In re Armstrong*, 294 B.R. 344, 354 (B.A.P. 10th Cir. 2003).

Consistent with the important policy of permitting impaired creditors to vote on a plan, temporary allowance of a claim under Bankruptcy Rule 3018(a) should be permitted if a claimant presents "sufficient evidence that it has a colorable claim capable of temporary evaluation."  *Id.*  In making its determination, a court should take into consideration the "undue delay in case administration [that] will result from delaying confirmation of a chapter 11 plan until after all claim objections can be heard."  *In re Harmony Holdings, LLC*, 395 B.R. 350, 354 (Bankr. D.S.C. 2008) (citing *Armstrong*, 294 B.R. at 354).

DIRECTV has presented evidence that easily demonstrates a "colorable claim" against Debtor under the ACPA.[10]  Indeed, DIRECTV has supplied detailed factual and legal bases for the Claim.  Had DIRECTV failed to present at least a "colorable claim," Debtor would have prevailed on his objection to the Claim, which, of course, he has not.

Moreover, waiting for resolution of Debtor's objection to the claim will create undue delay in Debtor's reorganization, a situation Rule 3018(a) is designed to prevent.

II. <u>DIRECTV HAS EASILY ESTABLISHED THAT ITS CLAIM IS COLORABLE.</u>

A successful claim under the ACPA requires proof that (1) the trademarks in question are distinctive or famous; (2) the domain names are identical or confusingly similar to or dilutive of those marks; and (3) the defendant registered, trafficked in, and/or used the domain names in bad faith.  15 U.S.C. §

---

[10]  *See* RJN, Exh. A (Proof of Claim); Exh. C (Response of Creditor DIRECTV, Inc. to Objection to Claim and Notice Thereof Filed by Debtor Jonathan Mitchell Shiff [Docket No. 413-1]).

1125(d)(1)(A).  As explained more fully in the pleadings submitted to this Court in response to Debtor's Objection to DIRECTV's Claim, which are submitted herewith as part of the RJN, Debtor does not seriously dispute the first two elements of DIRECTV's ACPA claim.[11]  In addition, DIRECTV has already presented evidence to show that Debtor's actions satisfy all nine non-exhaustive factors that indicate bad faith under the statute, thereby establishing the third and final element of a cybersquatting violation.  *See* 15 U.S.C. § 1125(d)(1)(B)(i).  As a result, DIRECTV easily meets Bankruptcy Rule 3018(a)'s "colorable claim" threshold requirement for the temporary allowance of a claim.

### III. STATUTORY DAMAGES UNDER THE ACPA PROVIDE A BASIS TO ESTIMATE THE AMOUNT OF DIRECTV'S CLAIM

Once a claimant meets Bankruptcy Rule 3018(a)'s threshold showing of a "colorable claim," the Court must engage in an "estimation process" to determine the amount of the claim that will be temporarily allowed for voting purposes.  *See In re FRG, Inc.*, 121 B.R. 451, 456 (Bankr. E.D. Pa. 1990).  The Court's estimate should reflect the amount that the claimant would be able to establish at trial by a preponderance of the evidence.  *Id*.

Under the ACPA, a trademark owner is entitled to the higher of actual damage or statutory damages.  15 U.S.C. 1117(d); S. Rep. No. 106-140 at 18 (Senate Report on the Anticybersquatting Consumer Protection Act).  Here, DIRECTV has chosen to recover statutory damages, which are essential because the "actual damages suffered by [a plaintiff] as a result of lost customers and good will is [often] incalculable." *Electronics Boutique Holdings Corp. v. Zuccarini*, 2000 WL 1622760 *7 (E.D. Pa. 2000).  When, as here, a party chooses to receive statutory damages, the Court must decide what amount between $1,000 and $100,000 per violation the Court considers just.  15 U.S.C. § 1117(d).  The facts

---

[11]  *See* RJN, Exh. B at 13-16 (Objection to Claim and Notice Thereof [Docket No. 380]).

here justify the maximum award per violation. Accordingly, this Court should temporarily allow DIRECTV's claim in its full amount of $10,700,000, which is based upon the maximum statutory damage amount for each of the 107 domain names at issue.

Debtor's bad faith use of DIRECTV's registered trademarks compels the awarding of maximum statutory damages under the ACPA.[12] Statutory damages in cybersquatting cases both "deter wrongful conduct and… provide adequate remedies for trademark owners who seek to enforce their rights in court." *See In re Wright*, 355 B.R. 192, 212 (C.D. Cal. 2006) (citing *Pinehurst, Inc. v. Wick*, 256 F. Supp. 2d 424, 432 (M.D.N.C. 2003)). Here, Debtor used 107 unauthorized domain names to sell the products and services of DIRECTV's competitor under the guise of a fake government website, falsified his contact information to hide his ownership of the website, and subsequently attempted to sell the domain names to DIRECTV for financial gain.

Courts in similar circumstances have routinely awarded maximum statutory damages. *See Graduate Management Admission Council v. Raju*, 267 F. Supp. 2d 505, 512-13 (E.D. Va. 2003) ("[B]ased on Raju's blatant use of GMAC's mark in his domain names and his use of the site to market and sell copyrighted GMAC materials, an award of maximum damages is appropriate."); *Lahoti v. Vericheck, Inc.*, 2007 WL 4269791 *14 (W.D. Wash. 2007) (awarding maximum statutory damages for Lahoti's use of Vericheck's mark in connection with a directory website providing links to companies that compete with Vericheck and attempt to sell the domain to Vericheck); *Aztar Corp. v. MGM Casino*, 2001 WL 939070 *6 (E.D. Va. 2001) ("Given Defendant's bad faith attempt to deceive

---

[12] The facts supporting this finding of bad faith are discussed in detail in DIRECTV's Response to Debtor's Objection to Proof of Claim. *See* RJN, Exh. C at 34-44 (Response of Creditor DIRECTV, Inc. to Objection to Claim and Notice Thereof Filed by Debtor Jonathan Mitchell Shiff [Docket No. 413-1]).

Internet consumers and profit from the good will Plaintiff has generated in its famous TROPICANA mark, which has injured Plaintiff by diluting its TROPICANA mark, the Court finds that the $100,000 in statutory damages requested by Plaintiff is reasonable and just.").

In *Louis Vuitton Malletier and Oakley, Inc. v. Veit*, the defendants registered the domain name <www.louisvuitton-replicas.com> and used it to sell counterfeit Louis Vuitton merchandise. 211 F. Supp. 2d 567, 578 (E.D. Pa. 2002). Despite the fact that the domain name accurately described the products on sale at the website, the court found maximum damages to be appropriate because of "Defendants' egregious acts in blatantly using Plaintiff Louis Vuitton's registered trademark to sell counterfeit Louis Vuitton products." *Id*. at 585.

Moreover, Debtor's claim that "the few cases where maximum statutory damages have been awarded . . . involve significant economic injuries to the Plaintiffs,"[13] is unsupported. In *Louis Vuitton*, the court awarded maximum damages even though there was "no evidence of the actual scope of the defendants' sales nor the number of hits the internet site received." *Id*. at 584. The absence of evidence of actual injury is not surprising as the difficulty in quantifying their loss is why defendants often choose to take advantage of the statutory damages provision. *Electronics Boutique Holdings*, 2000 WL 1622760 at *7.[14]

In *Graduate Management Admission Council*, the defendant registered the domain names <www.gmatplus.com> and <www.gmatplus.net> and posted a "web page at both sites that displayed the term 'GMATPLUS' in connection with the advertising and sale of GMAT test questions to which [plaintiff] owns the

---

[13] RJN, Exh. B at 19 (Objection to Claim and Notice Thereof [Docket No. 380]).

[14] Courts have also found that "in cases of trademark infringement and cybersquatting, irreparable injury is presumed. *Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 273 (4th Cir. 2002); *1-800 Contacts, Inc. v. WhenU.com*, 309 F. Supp. 2d 467, 506-07 (S.D.N.Y. 2003).

copyrights," without a license from plaintiff.  267 F. Supp. 2d at 509.  The court found that Raju's actions violated the ACPA and that the defendants "blatant use of [plaintiff's] mark in his domain names and his use of the site to market and sell copyrighted GMAC materials, [justified] an award of the maximum statutory damages ($200,000.00)."[15]  *Id*. at 513.

As these cases show, Debtor's egregious actions justify the maximum award.  Therefore, DIRECTV's claim of $10,700,000 against Debtor should be temporarily allowed for voting purposes.

Debtor previously attempted to argue that his violations of the ACPA are shielded by the statute's safe harbor provision because his use of the unauthorized domain names was allegedly based upon Debtor's role as a DIRECTV reseller.  This position, however, is directly contradicted by the facts.  Not only did Debtor's retailer agreements with DIRECTV explicitly forbid such domain name use,[16] but Debtor's most flagrant ACPA violations were also committed after Debtor's termination as a DIRECTV retailer.[17]  As such, Debtor could not have reasonably believed that his unauthorized use of DIRECTV's marks was legal.  Accordingly, the Claim should be temporarily allowed in the maximum amount. *See Virtual Works v. Volkswagen of America, Inc.*, 238 F.3d 264, 270 (4th Cir. 2001) ("All but the most blatant cybersquatters will be able to put forth at least some lawful motives for their behavior. To hold that all such individuals may qualify for

---

[15] Contrary to Debtor's claim that significant economic injuries are required, the court only mentioned sales by the defendant in passing and did not make any attempt to quantify the actual injury to the plaintiff.  *Graduate Management Admission Council*, 267 F. Supp. 2d at 509.

[16] *See* RJN, Exh. D at 57, 98, 128 (Declaration of Kristin Haley ISO DIRECTV's Response to Objection to Proof of Claim [Docket No. 413-2]).

[17] *See* RJN, Exh. C at 31-33 (Response of Creditor DIRECTV, Inc. to Objection to Claim and Notice Thereof Filed by Debtor Jonathan Mitchell Shiff [Docket No. 413-1]).

the safe harbor would frustrate Congress' purpose by artificially limiting the statute's reach.")

Debtor also has previously argued that DIRECTV was not damaged by Debtor's illegal use of DIRECTV's marks, and that Debtor consequently should not be held responsible for his ACPA violations. This assertion has no merit. Debtor's assertion fails to recognize that statutory damages play an essential role because "actual damages suffered by [a plaintiff] as a result of lost customers and good will is [often] incalculable." *Electronics Boutique Holdings*, 2000 WL 1622760 at *7. Debtor registered the unauthorized domain names in breach of his express agreements with DIRECTV, and subsequently used the domain names to sell the products of DIRECTV's major competitor. Courts award maximum statutory damages in such circumstances precisely because of the "incalculable" damages inflicted by such pernicious actions. *Id*. Far from being a peremptory strike, as Debtor suggests, DIRECTV's claim is rather based upon Debtor's clearly established ACPA violations. DIRECTV has demonstrated more than a "colorable claim" under Bankruptcy Rule 3018(a), as well as the likelihood of recovering maximum statutory damages from Debtor. Thus, in order to protect DIRECTV's right to vote on Debtor's proposed plan of reorganization, DIRECTV's claim should be temporarily allowed in the amount of $10,700,000.

## CONCLUSION

DIRECTV respectfully requests that the Court enter an order temporarily allowing DIRECTV's claim in the amount of $10,700,000 for the sole purpose of voting on Debtor's reorganization plan.

DATED:   August 11, 2009         QUINN EMANUEL URQUHART OLIVER &
                                 HEDGES, LLP
                                  By

                                    /s/ *Michael E. Williams*
                                   Michael E. Williams
                                   Attorneys for DIRECTV, Inc.